IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TERRON MILLER,                    :
    Petitioner                :
                              :        No. 1:24-cv-02072
    v.                        :
                              :        (Judge Kane)
WARDEN IRWIN, et al.,             :
    Respondents               :

### MEMORANDUM

Currently before the Court is pro se Petitioner Terron Miller ("Miller")'s application for leave to proceed in forma pauperis ("IFP Application") and petition for a writ of habeas corpus under 28 U.S.C. § 2254.  For the reasons set forth below, the Court will grant the IFP Application and dismiss the habeas petition.

## I.   BACKGROUND

On November 21, 2016, Miller pleaded guilty to six (6) counts of possession of a controlled substance with intent to deliver ("PWID") (35 P.S. § 780-113(a)(30)) and criminal conspiracy (18 Pa. C.S. § 903(a)) in the Court of Common Pleas of Blair County and was sentenced to a period of state incarceration for a minimum of five (5) years to a maximum of fifteen (15) years.  See Commonwealth v. Miller, 198 A.3d 1187, 1190 (Pa. Super. Ct. 2018).  Almost two-and-a-half (2 ½) years later, on March 4, 2019, Miller pleaded guilty to criminal conspiracy, PWID, dealing in proceedings of unlawful activities (18 Pa. C.S. § 5111), and corrupt organizations (18 Pa. C.S. § 911), and was sentenced to an aggregate sentence of a minimum of three (3) years to a maximum of six (6) years' state incarceration.  See Commonwealth v. Miller, No. 1144 WDA 2022, 2023 WL 7179446, at *1 (Pa. Super. Ct. Nov. 1, 2023) (unpublished); (Doc. No. 1 at 1–2).  This sentence was to run consecutively to his prior

sentence.  See Miller, 2023 WL 7179446, at *1.  Miller neither filed post-sentence motions nor an appeal from this sentence.  See id.

Instead, on October 10, 2021, Miller filed a pro se petition for collateral relief under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. §§ 9541–46 ("PCRA").  See id.  On September 6, 2022, the PCRA court dismissed the petition as untimely.  See id.  Miller appealed this dismissal to the Superior Court of Pennsylvania, which affirmed the dismissal through an unpublished memorandum opinion filed on November 1, 2023.  See id. at *5.  It does not appear that Miller challenged the Superior Court's decision by filing a petition for allowance of appeal with the Pennsylvania Supreme Court.  See (Doc. No. 1 at 4).

On November 22, 2024, Miller filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254 along with the IFP Application.[1]  (Doc. Nos. 1, 3.)  A day later, Miller remitted the $5 filing fee.  See (Unnumbered Docket Entry Under Doc. No. 3).

In his habeas petition, Miller appears to raise three (3) claims.  (Doc. No. 1 at 5–8.)  First, he asserts that there has been a miscarriage of justice because his sentencing order stated that "after a period of no less than 3 years, [he] shall be released on [a]utomatic [p]arole under the [s]upervision of the Pennsylvania state board of [p]arole and [p]robation," and the Commonwealth of Pennsylvania Department of Corrections ("DOC") "did not follow th[is] . . . order" by paroling him after he served his minimum sentence.  See (id. at 5).  Second, he claims that there was a violation of the Contract Clauses in the United States and Pennsylvania

---

[1]  The federal "prisoner mailbox rule" provides that a pro se prisoner's submission is deemed filed "at the time [the prisoner] delivered it to the prison authorities for forwarding to the court clerk."  See Houston v. Lack, 487 U.S. 266, 276 (1988).  Unfortunately, Miller did not include a declaration as to when he placed his petition in the prison mailing system along with his petition.  See (Doc. No. 1 at 14).  Nevertheless, the envelope containing the petition is postmarked on November 22, 2024.  As such, the Court uses November 22, 2024, as the petition's filing date.

Constitutions because "S.C.I. Forest denied [his] release." See (id. at 6). Finally, he asserts a "fraud upon the court" claim. See (id. at 8). For relief, Miller seeks his "[r]elease from [c]ustody after [c]ompletion of [his] minimum sentence." See (id. at 14).

Miller points out that he has a currently pending PCRA petition filed in the Court of Common Pleas of Blair County. See (id. at 12). Miller indicates that he asserts his miscarriage of justice claim in his PCRA petition and contends that the DOC "did not follow the sentencing judge's order dated 03/04/09." See (id. at 12).[2]

## II.    DISCUSSION

### A.    The IFP Application

Although Miller filed the IFP Application, he did not file the required certified copy of his prisoner trust fund account statement. See 28 U.S.C. § 1915(a)(2) ("A prisoner seeking to bring a civil action . . . without prepayment of fees or security therefor, in addition to filing the affidavit filed under paragraph (1), shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the [habeas petition], obtained from the appropriate official of each prison at which the prisoner is or was confined."). Regardless, Miller has paid the filing fee. Therefore, the Court will deny the IFP Application as moot.

### B.    The Section 2254 Petition

The Court has screened Miller's Section 2254 petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts. See R. 4, 28 U.S.C. foll. §

---

[2] The Court takes judicial notice of the docket sheet in Miller's criminal case, which is available through the Unified Judicial System of Pennsylvania Web Portal (https://ujsportal.pacourts.us/CaseSearch). See Commonwealth v. Miller, No. CP-07-CR-0001327-2017 (Blair County Ct. Com. Pl. filed June 28, 2017). The docket sheet indicates that Miller's PCRA petition remains pending. See id.

2254 ("If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."). As explained below, it plainly appears that Miller's petition should be dismissed.

### 1.    Construing Miller's Habeas Claims

Miller raises three (3) claims in his habeas petition. While he phrases the claims differently, they are all based on his belief that the DOC should have released him upon the expiration of his minimum sentence in accordance with the trial court's sentencing order. See (Doc. No. 1 at 5–12). Despite Miller's focus on the DOC, the Court has construed these claims as asserting that the Pennsylvania Board of Probation and Parole ("Parole Board") abused its discretion when it did not parole him once his minimum sentence expired. The Court construes the petition as such because the Parole Board, not the DOC, has exclusive authority to parole an individual, such as Miller, who is incarcerated in one of the DOC's correctional institutions. See 61 Pa. C.S. § 6132(a)(1)(i) (stating that the Parole Board has "exclusive power . . . [t]o parole and reparole, commit and recommit for violations of parole and to discharge from parole all persons sentenced by any court at any time to imprisonment in a State correctional institution pursuant to 42 Pa. C.S. § 9762 (relating to sentencing proceeding; place of confinement)."); see also Commonwealth v. Tilghman, 652 A.2d 390, 391 (Pa. Super. Ct. 1995) ("When an offender is sentenced to a maximum term of imprisonment of less than two years, the common pleas court retains authority to grant and revoke parole; when the maximum is two years or more, authority to grant or revoke parole is vested in the Parole Board." (citations omitted)), aff'd, 673 A.2d 898 (Pa. 1996). Thus, barring something such as a pardon or a decision invalidating Miller's sentence, the DOC cannot release Miller before the expiration of his maximum sentence unless

4

the Parole Board grants him parole.  Accordingly, the Parole Board, not the DOC, appears to be the appropriate respondent given the nature of Miller's claims.

In addition, Miller briefly states in his petition that he attempted to appeal from a decision by the Parole Board but was told he could not do so.[3]  See (Doc. No. 1 at 6).  It therefore appears that the Parole Board has denied Miller parole, which further supports the Court's construction of his petition as one challenging the Parole Board's denial of parole.

### 2. Whether the Court Should Abstain from Addressing Miller's Petition Because He Has a PCRA Petition Pending in the Court of Common Pleas

Miller has a PCRA petition currently pending in the Court of Common Pleas in which he apparently raises the same general claim raised here about a failure to parole him in accordance with the trial court's sentencing order.  See (Doc. No. 1 at 12 (indicating that he filed PCRA petition asserting claim that there was a "miscarriage of justice [because] the [DOC] did not follow the sentencing judge's order dated 03/04/19").  Although Miller again improperly focuses on the DOC instead of the Parole Board, this pending PCRA petition raising a seemingly identical claim requires this Court to consider whether to abstain from hearing Miller's petition so the state court can first address the PCRA petition.[4]

Regarding this abstention issue:

Abstention "is a judicially created doctrine under which a federal court will decline to exercise its jurisdiction so that a state court or state agency will have the opportunity to decide the matters at issue."  Heritage Farms, Inc. v. Solebury Twp.,

---

[3]  Although Miller does not identify the nature of this decision, the Court interprets it as a denial of parole.

[4]  Given that the Court has construed Miller's claim as relating to a parole denial, he did not need to exhaust his claim against the Parole Board before filing his Section 2254 petition.  See DeFoy v. McCullough, 393 F.3d 439, 445 (3d Cir. 2005) ("[C]laims of constitutional violations in the denial of parole in Pennsylvania need not be presented to the state courts via a petition for writ of mandamus in order to satisfy the requirement of exhaustion.").

671 F.2d 743, 746 (3d Cir. 1982).  In Younger v. Harris, 401 U.S. 37 (1971), the United States Supreme Court "established a principle of abstention when federal adjudication would disrupt an ongoing state criminal proceeding."  Yang v. Tsui, 416 F.3d 199, 202 (3d Cir. 2005) (discussing Younger). "Younger abstention is only appropriate in three types of underlying state cases: (1) criminal prosecutions, (2) civil enforcement proceedings, and (3) civil proceedings involving orders in furtherance of the state courts' judicial function."  PDX N., Inc. v. Comm'r N.J. Dep't of Labor & Workforce Dev., No. 19-2968, 2020 WL 6192954, at *6 (3d Cir. Oct. 22, 2020) (internal quotations omitted).

Younger abstention "is premised on the notion of comity, a principle of deference and 'proper respect' for state governmental functions in our federal system." Evans v. Court of Common Pleas, Delaware Cty., Pa., 959 F.2d 1227, 1234 (3d Cir. 1992) (citing Younger, 401 U.S. at 44).  Comity concerns are especially heightened when the ongoing state governmental function is a criminal proceeding.  See id.  The specific elements that warrant abstention are that "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims."  Schall v. Joyce, 885 F.2d 101, 106 (3d Cir. 1989) (citing Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982)).

Exceptions to the Younger doctrine exist where irreparable injury is "both great and immediate," where the state law is "flagrantly and patently violative of express constitutional prohibitions," or where there is a showing of "bad faith, harassment, or . . . other unusual circumstance that would call for equitable relief." Younger, 401 U.S. at 46, 53-54.  The exceptions are to be narrowly construed.  Hall v. Pennsylvania, Civ. A. No. 12-2373, 2012 WL 5987142, *2 (M.D. Pa. Nov. 29, 2012) (citing Loftus v. Twp. of Lawrence Park, 764 F. Supp. 354, 357 (W.D. Pa. 1991)).

Additionally, the United States Court of Appeals for the Third Circuit has held that Younger abstention is warranted when a criminal defendant is pursuing post-conviction relief.  See Peay v. Massiah-Jackson, 133 F. App'x 31 (3d Cir. 2005).

See Vurimindi v. Anhalt, No. 2:20-cv-05368, 2020 WL 6395466, at *2–3 (E.D. Pa. Nov. 2, 2020)

(omission in original).

After reviewing the elements for Younger abstention in the context of this case, the Court

will not abstain from considering Miller's petition.  The first two (2) requirements are met

insofar as there is an ongoing state criminal proceeding, i.e., a PCRA proceeding, which

implicates important state interests.  See Youmans v. Warden of SCI-Muncy, No. 3:23-cv-00757,

6

2023 WL 3876499, at *2 (M.D. Pa. May 10, 2023) ("It is evident from the state court electronic docket sheet, and the contents of the petition, that Petitioner is involved in ongoing criminal proceedings which implicate important state interests; she is awaiting a ruling on her PCRA petition.").  Nevertheless, the third element is not met because Miller cannot challenge the Parole Board's denial of parole through a PCRA petition.  See Commonwealth v. Vega, 754 A.2d 714, 718 (Pa. Super. Ct. 2000) (explaining that "[t]he PCRA is not the proper vehicle to seek review of the [Parole] Board's administrative decisions," such as to deny parole).  As such, Miller cannot raise a federal claim pertaining to the denial of parole in the state proceedings.  Accordingly, the Court will not abstain from considering Miller's petition.

### 3.    Analysis of Miller's Claims

#### a.    Contract Clause Claim

In his second claim, Miller asserts that the failure to release him on automatic parole following the expiration of his minimum sentence violates the Contract Clause in the United States and Pennsylvania Constitution, both which essentially prevent the Commonwealth of Pennsylvania from passing any law impairing the obligation of contracts.  See U.S. Const. art. I, § 10 ("No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . .");  Pa. Const. art. I, § 17 ("No . . . law impairing the obligation of contracts . . . shall be passed.").  Pennsylvania courts apply the Contract Clause of the Pennsylvania Constitution "in the same manner as its federal counterpart.  See Pa. Workers' Comp. Judges Pro. Ass'n v. Exec. Bd. of Com., 39 A.3d 486, 493 (Pa. Commw. Ct. 2012) (citing First Nat'l Bank of Pa. v. Flanagan, 528 A.2d 134 (Pa. 1987)).  Thus, the elements for a claim under both Contract Clauses are the same. See Transp. Workers Union of Am. v. Se. Pa. Transp. Auth., 145 F.3d 619, 621 (3d Cir. 1998) (explaining that the "Contract Clause analysis requires three threshold inquiries: (1) whether

there is a contractual relationship; (2) whether a change in a law has impaired that contractual relationship; and (3) whether the impairment is substantial" (citing Gen. Motors Corp. v. Romein, 503 U.S. 181, 186 (1992))); Pa. Workers' Comp. Judges Pro. Ass'n, 39 A.3d at 493 ("A court makes three threshold inquiries in evaluating a Contract Clause claim: (1) whether there is a contractual relationship; (2) whether a change in a law has impaired that contractual relationship; and (3) whether the impairment is substantial." (citing Transp. Workers Union of Am., 145 F.3d at 621)).  Overall, the Contract Clause "prohibition is aimed at the legislative power of the State, and not at the decisions of its courts, or the acts of administrative or executive boards or officers, or the doings of corporations or individuals."  See New Orleans Waterworks Co. v. La. Sugar Refin. Co., 125 U.S. 18, 30 (1888).

Here, Miller does not identify any contract in his petition.  Instead, he relies on the trial court's sentencing order, which is not a contract.  See Contract, Black's Law Dictionary (12th ed. 2024) (defining "contract" as, inter alia, "[a]n agreement between two or more parties creating obligations that are enforceable or otherwise recognizable at law").  To the extent that Miller is referencing any plea agreement between him and the Commonwealth, while that would constitute a contract, see Staton v. Pa. Bd. of Prob. and Parole, 171 A.3d 363, 366 (Pa. Commw. Ct. 2017) ("Contract principles are indeed implicated in the plea agreement process.  An offer from the Commonwealth seeking a defendant's plea of guilty can form a contract as in any other circumstance, whether accepted through a written plea agreement or by the defendant's performance in entering the guilty plea. Once the contract is formed, its terms must be fulfilled." (internal citation omitted)), his Contract Clause claim would still fail because he has not identified any change in Pennsylvania law that substantially impacted his plea agreement.  A decision by the Parole Board to deny Miller parole is not a "law" that could form the basis of a

Contract Clause claim.  Therefore, the Court will dismiss with prejudice Miller's Contract Clause claim.

### b.    Miller's Remaining Claims

For his two (2) remaining claims, Miller asserts that he should have been paroled upon the expiration of his minimum sentence.[5]  A Pennsylvania state inmate such as Miller can challenge the Parole Board's denial of parole through the filing of a Section 2254 petition raising a due process claim.  See Coady v. Vaughn, 251 F.3d 480, 485 (3d Cir. 2001) (determining that jurisdiction to entertain state prisoner's habeas petition challenging denial of parole lies under Section 2254); Goodman v. Wahl, No. 23-cv-02705, 2023 WL 9065593, at *3 (E.D. Pa. Dec. 8, 2023) ("Although there is no constitutional right to parole, denial of parole may give rise to a substantive due process deprivation if the denial 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998) and Block v. Potter, 631 F.2d 233, 236 (3d Cir. 1980))), report and recommendation adopted, 2024 WL 37938 (E.D. Pa. Jan. 3, 2024).  The district court reviews this decision for an abuse of discretion.  See Block, 631 F.2d at 236.  Upon such review, relief is available only if the petitioner can show that parole was arbitrarily denied based on some impermissible reason such as "race, religion, or political beliefs," or that the Parole Board made its determination based on "frivolous criteria with no rational relationship to the purpose of parole."  See id. at 236 n.2.  Relief is also available to a habeas petitioner if the Parole Board's

---

[5]  Miller's third claim is a "fraud upon the court" claim.  See (Doc. No. 1 at 8).  Miller does not develop this claim further in his petition.  See Palmer v. Hendricks, 592 F.3d 386, 395 (3d Cir. 2010) ("We have repeatedly emphasized that bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing on a habeas petition.").

determination to deny parole was rendered in the absence of the following due process

protections:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of the evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinder as to the evidence relied on and reasons for revoking parole.

See Morrissey v. Brewer, 408 U.S. 471, 488-89 (1972).

Additionally, "federal courts . . . are not to second-guess parole boards, and the

requirements of substantive due process are met if there is some basis for the challenged

decision." See Hunterson v. DiSabato, 308 F.3d 236, 246 (3d Cir. 2002); see also Coady, 251

F.3d at 487. Moreover, the "relevant level of arbitrariness required to find a substantive due

process violation involves not merely action that is unreasonable, but, rather, something more

egregious, which we have termed at times 'conscience shocking' or 'deliberately indifferent.'"

See Hunterson, 308 F.3d at 247.

In the instant case, Miller does not allege that he was denied parole based on race,

religion, ethnicity, political beliefs, or another impermissible reason. Miller also does not assert

that the Parole Board denied parole based on "frivolous criteria with no rational relationship to

the purpose of parole." See Block, 631 F.2d at 236 n.2. Instead, his sole contention is that the

Parole Board improperly denied him parole even though the trial court purportedly directed that

he be automatically paroled after a period of no less than three (3) years' incarceration. See

(Doc. No. 1 at 5). This contention is meritless.

In the first instance, the Parole Board could not have acted improperly in declining to

follow the trial court's purported sentencing order because the trial court lacked any authority to

10

direct the Parole Board to grant parole after Miller served his minimum sentence because the "exclusive power" to parole a state inmate lies with the Parole Board.  See 61 Pa. C.S. § 6132(a)(1)(i) (stating that the Parole Board "shall have exclusive power . . . [t]o parole and reparole, commit and recommit for violations of parole and to discharge from parole all persons sentenced by any court at any time to imprisonment in a State correctional institution pursuant to 42 Pa. C.S. § 9762 (relating to sentencing proceeding; place of confinement).");  see also Tilghman, 652 A.2d at 391 ("When an offender is sentenced to a maximum term of imprisonment of less than two years, the common pleas court retains authority to grant and revoke parole; when the maximum is two years or more, authority to grant or revoke parole is vested in the Parole Board." (citations omitted)).  The trial court would have possessed authority to parole only if Miller had received a county sentence, i.e., a maximum sentence of imprisonment of less than two (2) years.  See Tilghman, 652 A.2d at 391.  Therefore, even if the trial court's sentencing order stated as Miller contends, the Parole Board could not have abused its discretion in denying parole even if the trial court directed the granting of parole because the trial court lacked any authority to direct the Parole Board to grant parole.

Additionally, the trial court's sentencing order does not clearly state that Miller should be automatically paroled after a period no less than three (3) years.  Rather, it provides in pertinent part as follows:

> [Miller shall] be sentenced to incarceration in SCI-Camp Hill for a period of no less than three (3) years nor more than six (6) years.  Upon under [sic] [Miller's] release from incarceration, he shall be released on automatic parole under the supervision of the Pennsylvania State Board of Probation subject to the rules and regulations of that office along with the . . . special conditions[ listed below.]

See (Doc. No. 1-4 at 45).  Unfortunately, this language is awkward and unclear.  It states that Miller would be "released on automatic parole" "upon . . . his release from incarceration," which

when read literally indicates that after Miller is released from incarceration, he would be placed on automatic parole.  This is nonsensical because the Parole Board granting Miller parole would lead to his release from incarceration.  He would not need to be released from incarceration before being paroled.  As such, a much more reasonable, and possibly the only reasonable interpretation of the language used by the trial court in its sentencing order, is that if Miller is released on Parole, he would be supervised by the Parole Board and subject to certain special conditions while on parole.[6]

In conclusion, the language used by the trial court in its sentencing order did not unequivocally direct Miller's automatic parole after the expiration of his minimum sentence.  Even if it did, it could not form the basis of a challenge to the Parole Board's decision because the Parole Board retains exclusive authority to parole state offenders like Miller.  Therefore, the Parole Board could not have abused its discretion in failing to follow an order that the trial court could not issue in the first place and, consequently, Miller is not entitled to habeas relief on either of his remaining claims in this case.

### C.    Certificate of Appealability

"Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas proceeding in which the

---

[6]  The Court recognizes that the trial court was also without authority to impose these special conditions on Miller's parole.  See 61 Pa. C.S. § 6132(a)(3) (stating that the Parole Board has "exclusive power . . . [t]o establish special conditions of supervision for paroled offenders"); Commonwealth v. Coulverson, 34 A.3d 135, 142 (Pa. Super. 2011) (concluding that "to the extent the trial court purported to impose conditions of parole in its sentencing order, those conditions and the order exceed[ed] the bounds of the court's authority"); see also Commonwealth v. Garcia, No. 2709 EDA 2022, 2024 WL 1155420, at *9 (Pa. Super. Ct. Mar. 18, 2024) (unpublished) (relying on Coulverson and "conclud[ing] that the trial court improperly imposed parole conditions as part of Appellant's sentence").  However, Miller has not raised any claim regarding the special conditions of parole imposed, and it does not appear that he ever exhausted such a claim in the state courts.

detention complained of arises out of process issued by a State court[.]"  See 28 U.S.C. § 2253(c)(1)(A).  A judge may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  See id. § 2253(c)(2).  This showing requires a habeas petitioner to demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement further."  See Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted).  In this case, the Court declines to issue a certificate of appealability as jurists of reason would not find it debatable whether the Court should dismiss with prejudice this habeas petition.

## III.    CONCLUSION

For the foregoing reasons, the Court will grant the IFP Application, dismiss with prejudice Miller's Section 2254 habeas petition, and not issue a certificate of appealability.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania